IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NATHAN WATERS, | : | |
| | : | |
| Plaintiff, | : | Case No. _____ |
| | : | |
| v. | : | |
| | : | |
| GENERAL MILLS OPERATIONS, LLC, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Nathan Waters is a white male who worked at the Covington location of General Mills.  Waters was harassed by white technicians because he is a white man married to a non-American Muslim woman of color, has children of color, and has several disabilities.  Waters begged for help, protection, and a transfer from his TTL, Tanis Corley; Platform Lead, Matthew Hartley; Plant Manager, Orric Browning; local HR representative, Mandy Calloway; corporate HR representative, Megan Asturias; and even General Mills' Vice President of Human Resources, Jacqueline Williams-Roll.  Waters provided proof that he was being threatened with physical violence by racist technicians.  Instead of protecting Waters, General Mills forced him to continue to work with racist technicians, who ultimately accused Waters of threatening them with violence.

With no witnesses or evidence that Water did so, he was terminated and the racist technicians were protected and retained. This is one example of the culture of white supremacy that is facilitated by Greg Cantrell and the Good Ole Boys and has been ratified and approved by General Mills HR and as a corporate entity.

## JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protections of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

2.

Plaintiff asserts claims under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

3.

Pursuant to 28 U.S.C. § 1391(b), § 1391(c), and N.D. Ga. L.R. 3.1, the Atlanta Division of this Court is the proper venue for Plaintiff's claims because Defendant is subject to this Court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to the claim occurred within the Atlanta Division of this Court. *See also* N.D. Ga. L.R. 3.1(B)(1)(a) and 3.1(B)(3).

## PARTIES

4.

Plaintiff is a white male and a former employee of Defendant who worked at General Mills' manufacturing facility in Covington, Georgia, until he was terminated in February 2024.

5.

Plaintiff is a citizen of the United States and resident of the State of Georgia; he submits himself to the jurisdiction of this Court.

6.

General Mills Operations, LLC ("Defendant" or "General Mills"), is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota, and was properly served by personal service of process

upon its registered agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

## ADMINISTRATIVE PROCEEDINGS

7.

Defendant is a covered employer under Title VII.

8.

Plaintiff timely filed two charges of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

9.

The EEOC has not issued Plaintiff a Notice of the Right to Sue ("NRTS") against Defendant yet; however, Plaintiff's § 1981 race discrimination case does not require administrative exhaustion and is, therefore, ripe to file.

10.

According to Defendant, Plaintiff's "suggestion that [he needs] to wait for [an] NRTS letter [would] ignore[ ] the case law of this circuit providing numerous options to properly allege and preserve Title VII claims without an NRTS letter." (*Davis et al. v. General Mills*, 1:24-cv-02409-MLB-JKL, Doc. 25 at 9.)

11.

This suit is timely, appropriate, and valid in all respects.

## STATEMENT OF FACTS

12.

Waters worked in the Snacks Department of West Plant.

13.

Waters told his TTL, Tanis Corley, a white female, that his fiancé – then, later, wife – is Muslim and her country of origin is Indonesia.

14.

Waters was Facebook "friends" with Corley.  This gave Corley and others access to photographs of Waters and his wife, which included her wearing attire related to Islam, including the hijab and sarong, and her attending Islamic madrasa (institution of Muslim education).

15.

Corley told other General Mills employees about Waters' non-white, non-American, Muslim wife.

16.

Waters was harassed by numerous white technicians.

17.

Sam "Boley" Harrison made derogatory comments about Waters and his Muslim wife and children.

18.

Harrison stated that Waters lost his "birthright" by marrying and having children with a Muslim, non-white, dark brown, Asian woman.

19.

Harrison referred to Muslims as "towelheads", "ragheads", "goat fuckers", "terrorists", "carpet kissers", "sand monkeys", "sand [N-words]", "Hajjis", "Muzzies", and "daughter fuckers".   Harrison continuously made similar comments to Waters several times per month.

20.

Harrison told Waters that he "had a couple of bananas for kids" because they were "yellow on the outside, white on the inside".

21.

Wyatt Grigory referred to Muslims as "towelheads", "ragheads", "goat fuckers", "terrorists", "carpet kissers", "sand monkeys", "sand [N-words]", "Hajjis", "Muzzies", and "daughter fuckers".  Grigory continuously made similar comments to Waters several times per week or daily.

22.

Grigory also made racially charged comments to Black employees in Corley's presence, such as Black Americans would be better off enslaved than living in another country.

23.

Grigory sent multiple racist and Islamophobic messages and images to Waters. Some examples of Grigory's racist text messages are reprinted below in paragraphs 24-26.

24.



25.



26.





27.

Grigory was previously in the Army.  Individuals in his platoon described him as a Neo-Nazi and Skinhead affiliated with a white supremacy organization in California.

28.

Grigory was roommates with a Black person in his platoon.  Grigory openly played skinhead music with lyrics such as "[N-word] [N-word] get on the boat, [N-word] [N-word] row row."  The Black platoon member asked Grigory if they were friends and he responded, "I would take a bullet for you, man.  But when the race war starts, stay away from me and I will try to wait and kill you last."

29.

Numerous circumstances about Grigory made non-extremist employees uncomfortable.  For instance, Grigory married and had a child with his former step-daughter who he raised from when she was nine years old.

30.

One of Grigory's technician teammates was Ascanio "Tony" Campos, who also sent racist text messages to Waters, including the screenshot reprinted in paragraph 31.

31.



32.

Jay Coleman referred to Muslims as "towelheads", "ragheads", "goat fuckers", "terrorists", "carpet kissers", "sand monkeys", "sand [N-words]", "Hajjis", "Muzzies", and "daughter fuckers". Coleman continuously made similar comments to Waters several times per month.

33.

Coleman's Facebook page is replete with racially charged comments and memes, as well as photographs of him mocking Black people in real life. Photographs and images from Coleman's Facebook page are reprinted below in paragraphs 34-37.

34.



35.



36.



37.



38.

Coleman also openly posted photographs of himself with assault weapons:



39.

Corey Smollen referred to Muslims as "towelheads", "ragheads", "goat fuckers", "terrorists", "carpet kissers", "sand monkeys", "sand [N-words]", "Hajjis", "Muzzies", and "daughter fuckers". Smollen continuously made similar comments to Waters several times per month.

40.

Waters reported discrimination and harassment to Megan Asturias and Jacqueline Williams-Roll in corporate HR:



41.

Jacqueline Williams-Roll, the Chief Human Resources Officer of General Mills, sold over $1.6 million worth of stock within a month of Conrad James' race discrimination complaint,[1] which was the first lawsuit alleging that a white supremacist organization was operating in management and HR at the Covington facility and asserting a concerted effort to hold Black employees to a higher, more stringent standard than white employees.

42.

Around October 2023, a "Destroy" sticker was placed on Waters' locker above his name:

---

[1] *James v. General Mills Operations, LLC*, Case No. 1:23-cv-01560-SCJ-RDC, Doc. 1 (N.D. Ga. Apr. 11, 2023).



43.

This was deeply troubling to Waters because he knew "Destroy" to be a military term for "Kill."

44.

Waters did not believe that General Mills was taking the threats and abuse seriously, especially because a technician had been murdered by another technician at the Covington facility in 2022.

45.

Waters reported to management and HR that the harassment and discrimination was exacerbating his anxiety and depression, and he requested a transfer.

46.

TTL Tanis Corley and Platform Lead Matt Hartley refused to transfer Waters and falsely claimed that Waters wanted a transfer because he was lazy and wanted an easier job.

47.

Waters also reported the threat directly to Plant Manager Orric Browning:



48.

Browning told Waters that Chris Morrison would "be reaching out to you." Morrison is a member of the Good Ole Boys, a white supremacist organization in management and HR at the Covington facility. Upon information and belief, Morrison was transferred out of Covington as a result of ongoing discrimination litigation and allegations that he manufactured evidence to support the discriminatory and retaliatory terminations of Black employees.

49.

In late January 2024, racist technicians accused Waters of threatening violence. There were no witnesses to this alleged conduct of Waters because it never occurred and was fabricated.

50.

General Mills had ample knowledge of the hostility against Waters for discriminatory reasons and refused to protect him from that situation.

51.

General Mills knowingly put Waters into a position that allowed racist technicians to accuse him of misconduct then knowingly terminated Waters without evidence to support allegations from individuals known to hold discriminatory animus against Waters.

## COUNT ONE

### Title VII:  Disparate Treatment/Discrimination (Race)

52.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

53.

Plaintiff is a member of a class protected by Title VII.

54.

Defendant is a covered employer under Title VII.

55.

Plaintiff was qualified for the job that he was performing at the time he suffered adverse employment actions up to and including termination.

56.

Plaintiff suffered an adverse employment action despite being qualified for his position.

57.

Plaintiff was treated less favorably than similarly situated employees outside of his protected class who were not subjected to hostility due to Good Ole

Boys' and racist technicians' objection to marriages, and children born to marriages, of individuals of different races.

58.

Defendant's problem with Plaintiff was that he is Caucasian and is married to and has children with non-American Muslim woman of color.

59.

Plaintiff's race was a motivating factor for the adverse employment actions taken against him.

60.

Plaintiff asserts a disparate treatment claim pursuant to Title VII.

61.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT TWO

### Title VII:  Retaliation (Race)

62.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

63.

Plaintiff is a member of a class protected by Title VII.

64.

Defendant is a covered employer under Title VII.

65.

Plaintiff engaged in a protected activity when he reported ongoing harassment to supervisors, HR personnel, the plant manager, and others.

66.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against him, including disciplining him, terminating him, creating a hostile work environment that would have dissuaded a reasonable worker from making complaints of discrimination and harassment, and taking other disparate adverse actions against him.

67.

Plaintiff's protected activity under Title VII was a motivating factor for the adverse employment action taken against them.

68.

Plaintiff asserts a retaliation claim pursuant to Title VII.

69.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT THREE

### Title VII:  Hostile Work Environment (Race)

70.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

71.

Plaintiff was discriminated against and harassed because he was the wrong race to be married to a non-American Muslim woman of color.

72.

The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

73.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or

the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

74.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

75.

Plaintiff asserts a hostile work environment claim pursuant to Title VII.

## **COUNT FOUR**

### Title VII:  Disparate Treatment/Discrimination (Color)

76.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

77.

Plaintiff is a member of a class protected by Title VII.

78.

Defendant is a covered employer under Title VII.

79.

Plaintiff was qualified for the job that he was performing at the time he suffered adverse employment actions up to and including termination.

80.

Plaintiff suffered an adverse employment action despite being qualified for his position.

81.

Plaintiff was treated less favorably than similarly situated employees outside of his protected class who were not subjected to hostility due to Good Ole Boys' and racist technicians' objection to marriages, and children born to marriages, of individuals with different skin colors.

82.

Defendant's problem with Plaintiff was that he is white and is married to and has children with non-American Muslim woman of color.

83.

Plaintiff's color was a motivating factor for the adverse employment actions taken against him.

84.

Plaintiff asserts a disparate treatment claim pursuant to Title VII.

85.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT FIVE

### Title VII:  Retaliation (Color)

86.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

87.

Plaintiff is a member of a class protected by Title VII.

88.

Defendant is a covered employer under Title VII.

89.

Plaintiff engaged in a protected activity when he reported ongoing harassment to supervisors, HR personnel, the plant manager, and others.

90.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against him, including disciplining him, terminating him, creating a hostile work environment that would have dissuaded a reasonable worker from making complaints of discrimination and harassment, and taking other disparate adverse actions against him.

91.

Plaintiff's protected activity under Title VII was a motivating factor for the adverse employment action taken against them.

92.

Plaintiff asserts a retaliation claim pursuant to Title VII.

93.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT SIX

### Title VII: Hostile Work Environment (Color)

94.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

95.

Plaintiff was discriminated against and harassed because he was the wrong color (white) to be married to a non-American Muslim woman of color.

96.

The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as

subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

97.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

98.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

99.

Plaintiff asserts a hostile work environment claim pursuant to Title VII.

## **COUNT SEVEN**

### Title VII:  Disparate Treatment/Discrimination (Color)

100.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

101.

Plaintiff is a member of a class protected by Title VII.

102.

Defendant is a covered employer under Title VII.

103.

Plaintiff was qualified for the job that he was performing at the time he suffered adverse employment actions up to and including termination.

104.

Plaintiff suffered an adverse employment action despite being qualified for his position.

105.

Plaintiff was treated less favorably than similarly situated employees outside of his protected class who were not subjected to hostility due to Good Ole Boys' and discriminatory technicians' objection to marriages, and children born to marriages, of individuals of different religions.

106.

Defendant's problem with Plaintiff was that he "should be Christian" and is married to and has children with non-American Muslim woman of color.

107.

Plaintiff's color was a motivating factor for the adverse employment actions taken against him.

108.

Plaintiff asserts a disparate treatment claim pursuant to Title VII.

109.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes,

42 U.S.C. § 2000e-5.

## **COUNT EIGHT**

### Title VII:  Retaliation (Religion)

110.

Plaintiff repeats and realleges each and every allegation above as it set forth

herein in full.

111.

Plaintiff is a member of a class protected by Title VII.

112.

Defendant is a covered employer under Title VII.

113.

Plaintiff engaged in a protected activity when he reported ongoing

harassment to supervisors, HR personnel, the plant manager, and others.

114.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against him, including disciplining him, terminating him, creating a hostile work environment that would have dissuaded a reasonable worker from making complaints of discrimination and harassment, and taking other disparate adverse actions against him.

115.

Plaintiff's protected activity under Title VII was a motivating factor for the adverse employment action taken against him.

116.

Plaintiff asserts a retaliation claim pursuant to Title VII.

117.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT NINE

### Title VII:  Hostile Work Environment (Religion)

118.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

119.

Plaintiff was discriminated against and harassed because he should be Christian and being Christian is not compatible with being married to a non-American Muslim woman of color.

120.

The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

121.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

122.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

123.

Plaintiff asserts a hostile work environment claim pursuant to Title VII.

## COUNT TEN

## Americans with Disabilities Act:  Disparate Treatment

124.

Several conditions rendered Waters disabled:  a congenital ear condition, anxiety and depression caused by workplace bullying, and a work injury.

125.

Defendant regarded Waters as disabled.

126.

The racist technicians who harassed and discriminated against Waters also made fun of his congenital ear condition

127.

Waters requested an accommodation of being transferred to another department to get away from the racist technicians harassing him because that circumstance was causing and/or exacerbating anxiety and depression.

128.

General Mills refused to grant Waters the accommodation even though it routinely allowed white employees who were not married to a non-American, Muslim individual of color to transfer to other departments or roles for all kinds

of reasons, like helping the person keep their job or to be closer to a friend or family member.

129.

Waters' disability actually motivated the decision to refuse to grant him an accommodation and to terminate him.

130.

As a direct, legal, and proximate result of Defendant's violations of Waters' rights under the ADA, Waters was and remains injured in an amount to be proven at trial.

131.

Defendant's actions were taken with malice or with reckless indifference to Waters' federally protected rights.

132.

Defendant is liable to Waters for all damages arising from its violations of his rights under the ADA in an amount to be proven at trial.

**<u>COUNT ELEVEN</u>**

**<u>Americans with Disabilities Act:  Failure to Accommodate</u>**

133.

All preceding paragraphs are incorporated as if fully restated herein.

40

134.

Waters remained able to perform the essential functions of his Technician position.

135.

Defendant refused to allow Waters to continue to perform the essential functions of his Technician job or an accommodated position in a different department even though he remained physically able and willing to do so.

136.

As a direct, legal, and proximate result of Defendant's violations of Waters' rights under the ADA, Waters was and remains injured in an amount to be proven at trial.

137.

Defendant's actions were taken with malice or with reckless indifference to Waters' federally protected rights.

138.

Defendant is liable to Waters for all damages arising from their violations of his rights under the ADA in an amount to be proven at trial.

## COUNT TWELVE

### Americans with Disabilities Act:  Retaliation

139.

All preceding paragraphs are incorporated as if fully restated herein.

140.

Waters engaged in statutorily protected conduct by requesting an accommodation.

141.

Waters' statutorily protected conduct was a motivating factor for the adverse employment actions taken against him.

142.

As a direct, legal, and proximate result of Defendant's violations of Waters' rights under the ADA, Waters was and remains injured in an amount to be proven at trial.

143.

Defendant's actions were taken with malice or with reckless indifference to Waters' federally protected rights.

144.

Defendant is liable to Waters for all damages arising from its violations of his rights under the ADA in an amount to be proven at trial.

## **COUNT THIRTEEN**

### 42 U.S.C. § 1981:  Race Discrimination

145.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

146.

Pursuant to the Civil Rights Act of 1866 –

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  This provision applies to nongovernmental discrimination.  *Id.* at § 1981(c).

147.

General Mills has knowingly allowed white supervisors and decision makers who are members of a fraternal white supremacist organization, "the Good Ole Boys," to operate the Covington facility in a manner that systematically permits technicians and supervisors with racial and discriminatory animus to impact the job duties and compensation of certain disfavored employees.

148.

The highest levels of management and HR within General Mills were aware of Waters being harassed, bullied, threatened, and discriminated against on the basis of race, and they were aware of Waters' efforts to end that circumstance and be permitted to continue his job.

149.

Instead of taking actions to protect Waters from discrimination, General Mills allowed it to occur, allowed the racist technicians to lie about Waters' conduct, and side with those racist technicians with absolutely no evidence that Waters threatened the racists.

150.

The only evidence available to General Mills about the dispute proved that Waters was the victim of harassment on the basis of race.

151.

Nonetheless, General Mills terminated Waters in violation of its own policies.

152.

A Department of Labor hearing officer found that Waters was entitled to unemployment benefits because "[t]he employer has not presented testimony or evidence to prove the claimant was at fault in the separation from employment."

153.

Plaintiff asserts a disparate treatment claim pursuant to 42 U.S.C. § 1981.

154.

The actions by General Mills described in this Count amount to an ongoing and continuous violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

155.

Plaintiff is entitled to an award of damages against Defendant in an amount equal to all monetary and non-monetary losses he suffered.

## COUNT FOURTEEN

### 42 U.S.C. § 1981:  Retaliation

156.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

157.

Plaintiff engaged in a protected activity when he complained about being targeted and treated differently because he is the wrong race to be married to and have children with a non-American, Muslim, woman of color.

158.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against him, including termination.

159.

Plaintiff asserts a retaliation claim pursuant to 42 U.S.C. § 1981.

## COUNT FIFTEEN

### 42 U.S.C. § 1981:  Hostile Work Environment

160.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

161.

Plaintiff was discriminated against and harassed based on his race by General Mills' technicians and the same was allowed by the highest levels of supervisors, HR personnel, and others within the company.

162.

The racist technicians' discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

163.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discriminations and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

164.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

165.

Plaintiff asserts a hostile work environment claim pursuant to 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a)    Declaratory judgment that General Mills violated Waters' Title VII, § 1981, and ADA rights;

(b)    Temporary and permanent injunctive relief, along with this Court's oversight for a reasonable duration, disbanding the Good Ole Boys, holding racist technicians and decisionmakers accountable, and implementing lawful employment practices that give employees the full benefit of employment at General Mills without regard to race or other protected characteristics;

(c)    Full back pay from the date of termination taking into account all raises to which Waters would have been entitled but for Defendant's unlawful activity, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)    Reinstatement or front pay to compensate Waters for lost future wages, benefits, and pension;

(e)    Full amount of financial losses caused to Plaintiff as a result of the racist employment practices at the Covington facility;

(f)    Compensatory damages in an amount to be determined by the enlightened conscience of the jury for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(g)    Award of costs and expenses of this action, together with reasonable attorney and expert fees;

(h)    Punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish Defendant for its conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(i)    Judgment against Defendant for damages incurred by Plaintiff;

(j)    Judgment against Defendant in an amount to fully and adequately compensate Plaintiff;

(k)    An award of pre-judgment and post-judgment interest;

(l)    A trial by jury on all issues triable to a jury; and

(m)    Other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of February 2025.


By:    /s/ Douglas H. Dean
       Georgia Bar No. 130988
       Attorney for Plaintiff
       Dean Thaxton, LLC
       601 E. 14th Avenue (31015)
       Post Office Box 5005
       Cordele, Georgia 31010
       T:  (229) 271-9323
       F:  (229) 271-9324
       E:  *doug@deanthaxton.law*


By:    /s/ Linda G. Carpenter
       Georgia Bar No. 111285
       Sharon L. Neal, Esq.
       Georgia Bar No. 536060
       Attorneys for Plaintiff
       The Brosnahan Law Firm
       31 Lenox Pointe, NE
       Atlanta, GA 30324
       T:  (404) 853-8964
       F:  (678) 904-6391
       E:  *lgc@brosnahan-law.com*
       E:  *sharon@brosnahan-law.com*